**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| NELIA VIRTUSIO,<br><br>            Plaintiff,<br><br>     v.<br><br>FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.,<br><br>            Defendant. | Case No. 12-cv-00602 NC<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 26 |

This action was brought by plaintiff Nelia Virtusio against her former employer, Financial Industry Regulatory Authority, Inc. ("FINRA"). Plaintiff alleges breach of contract, bad faith, intentional infliction of emotional distress, and failure to pay wages arising out of FINRA's decision not to pay short-term disability ("STD") benefits allegedly due to plaintiff. FINRA moves for summary judgment. The Court finds the motion suitable for disposition without a hearing under Civil Local Rule 7-1(b). Because plaintiff fails to establish that a genuine issue of material fact exists as to her allegations that FINRA was contractually obligated to provide short-term disability benefits for plaintiff's work-related disability, the Court GRANTS FINRA's motion for summary judgment.

//

## I. BACKGROUND

Plaintiff commenced this action on October 6, 2011, in San Francisco Superior Court, asserting claims for (1) breach of contract, (2) bad faith, (3) intentional infliction of emotional distress, and (4) failure to pay wages against her former employer FINRA. Dkt. No. 1. FINRA removed the action to this Court on February 6, 2012. *Id.* The Court has jurisdiction under 28 U.S.C. § 1332(a)(1). *See id.* at 2-3. The parties consented to the jurisdiction of a United States Magistrate Judge under 28 U.S.C. § 636(c). Dkt. Nos. 11, 15.

The gravamen of the complaint is that FINRA breached an alleged agreement to pay plaintiff short-term disability benefits when she became disabled from severe chronic pain in her shoulders and neck. *See* Dkt. No. 1. FINRA now moves for summary judgment, asserting that all of plaintiff's clams fail as a matter of law because the short-term disability plan does not provide benefits for workplace injuries and because it is undisputed that plaintiff's injury occurred at work. Dkt. No. 26-1.

**A.  FINRA's Request for Judicial Notice**

FINRA requests that the Court take judicial notice of the following documents in support of its motion for summary judgment: (1) plaintiff's deposition before the Workers' Compensation Appeals Board, produced by her in discovery, and (2) Judge Hamilton's order in *Virtusio v. Financial Industry Regulatory Authority Long Term Disability Income Plan*, No. 12-cv-03745 PJH issued on November 5, 2012. Dkt. No. 26-2. Plaintiff has not opposed this request for judicial notice.

The request for judicial notice of the deposition transcript is denied. The deposition transcript and its contents are not facts "generally known within the trial court's territorial jurisdiction" or that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see Nicewander v. MTC Financial, Inc.*, No. 10-cv-2141, 2012 WL 1185943, at *2 n.2 (S.D. Cal. Apr. 8, 2012) (citation omitted). Witness statements given under oath to a shorthand reporter are treated as "affidavits" by the witness for summary judgment purposes, even if taken in a separate

proceeding. *See Curnow v. Ridgecrest Police*, 952 F.2d 321, 324 (9th Cir. 1991); *Gulf USA Corp. v. Federal Ins. Co.*, 259 F.3d 1049, 1056 (9th Cir. 2001). Generally, a deposition transcript is properly authenticated when it shows the deponent's name and includes the court reporter's certification that the transcript is a true record of the testimony of the deponent. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 774 (2002). Accordingly, while the Court denies the request for judicial notice as to plaintiff's Workers' Compensation deposition transcript, the Court finds it appropriate to consider plaintiff's testimony as evidence for the purposes of the present summary judgment motion. The Court notes, however, that its decision to grant summary judgment is adequately supported by the testimony provided by plaintiff in her deposition in this case, and does not depend on her statements made at the Workers' Compensation deposition.

A court may take judicial notice of another court's order. *See Holder v. Holder*, 305 F3d 854, 866 (9th Cir. 2002). However, the Court may not accept as true the facts recited therein. *See Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2003); *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001). FINRA's request for judicial notice of Judge Hamilton's order is granted.

**B.  Plaintiff's Injury**

Unless otherwise stated, the parties do not genuinely dispute the following facts. Plaintiff began working for FINRA in August 1989 as a secretary. Dkt. Nos. 26-2 at 19:25-20:4; 27-1 at 21:24-25, 22:20-23:1. Plaintiff's employment was at will. Dkt. No. 27-3 at 63:4-15. She went through several promotions and by the date of her termination was employed as a senior compliance examiner. Dkt. No. 27-1 at 22:20-24:14. Plaintiff claims she began to have pain in her left shoulder around October 2008. Dkt. No. 26-2 at 38:15-39:12.

At her deposition in this case, plaintiff testified that her injury was caused by the poor ergonomics of her desk. Specifically, she was asked about a July 2009 email she sent to Jeff Carlson, claims case manager for Liberty Mutual, in connection with her Workers' Compensation claim:

> Q. And in the middle of that paragraph you talk about what you've provided, and you say: "I provided you with a copy of that report via e-mail. It is plain black and white: Poor ergonomics on my desk caused my work injury on my shoulders and now my spine also." What do you mean by "plain black and white"?
>
> A. Well, the site-solution report shows that the cause of this injury was my ergonomics; the desk was not ergonomic.
>
> Q. So did that report say it was an industrial injury caused at work?
>
> A. I know site solutions sent the letter to Dr. Friesen that indicated something like -- I don't know. I don't have the letter with me, on hand.
>
> Q. Was it your view that the reason your injury took place was because of your -- the poor ergonomics on your desk?
>
> A. Yes.

Dkt. Nos. 27-1 at 74:2-76:12; 27-2 at 33.

At her deposition before the Workers' Compensation Appeals Board, plaintiff also testified under oath that she believed her cumulative trauma occurred at work and that her doctor indicated to her that the injury was work-related. Dkt. No. 26-2 at 38:15-17, 46:8-13. Plaintiff also filed a Workers' Compensation appeal in which she indicated that the injury occurred at work. Dkt. Nos. 27 ¶ 5; 27-12 at 7. In her declaration submitted in opposition to the summary judgment motion, plaintiff states that she "became disabled because of a gradual deterioration of [her] shoulders and neck, which seems to have been associated with working at a computer day after day." Dkt. No. 38 ¶ 2.

Plaintiff testified that she reported this pain to her office manager, Roni Aguila, on February 4, 2009 and that Aguila suggested she contact Jackie Thompson, who handles ergonomic matters for FINRA. Dkt. Nos. 26-2 at 25:3-16, 39:13-15, 41:2-12; 27-1 at 76:19-77:9. Ms. Thompson informed plaintiff that she would have an ergonomics review scheduled. Dkt. No. 21-1 at 78:3-10. FINRA thereafter provided an ergonomics specialist who assessed plaintiff's workstation on February 9, 2009. Dkt. No. 26-2 at 24:23-25:6, 42:1-22, 44:20-45:5. The specialist observed that plaintiff's desk was too high and suggested several ergonomic alterations, including that plaintiff be given a headset, a keyboard tray, and a document tray. *Id.* The height of plaintiff's chair was adjusted and the additional equipment was scheduled to be delivered approximately March 9, 2009. *Id.*

at 43:6-17; Dkt. No. 27-1 at 78:11-19.  However, plaintiff claims she awoke on March 2, 2009, with severe shoulder pain and called in sick to work.  Dkt. No. 26-2 at 44:8-15.

**C.   Plaintiff's Termination**

Plaintiff did not return to work.  Her last day at FINRA was February 27, 2009.  Dkt. Nos. 27-3 at 104:22-105:7; 27-11 at 2.  She provided additional doctor's notes and requested several extensions of her return to work date.  Dkt. Nos. 27-1 at 71:21-72:16, 86:9-18; 27-2 at 31, 38.  On August 3, 2009, Karen Dickey, FINRA's HR service manager, sent plaintiff a letter informing her that her continuous series of requests to push back her start date amounted to a request for "indefinite leave" and as of August 3, 2009, plaintiff's position would be considered vacant.  Dkt. Nos. 27-1 at 86:9-18; 27-2 at 38.  Plaintiff was ultimately terminated on September 11, 2009.  Dkt. Nos. 27-1 at 88:6-22; 27-2 at 39.

**D.   Plaintiff's Claims for Benefits**

Plaintiff applied for Worker's Compensation on March 9, 2009.  Dkt. No. 27-1 at 63:21-25.  While her initial application was denied based on insufficient records that her condition occurred because of her work duties, plaintiff filed an appeal which was granted and plaintiff is currently receiving Workers' Compensation for her injury.  Dkt. Nos. 27-3 at 40:10-24, 42:14-21; 27-2 at 34; 27-5 at 10.

After the initial denial of plaintiff's Workers' Compensation claim, FINRA HR relationship manager, Karen Dickey, sent plaintiff an email on July 9, 2009, informing her "[s]ince your claim for Workers Compensation has been denied, you have the opportunity to apply for FINRA's Short Term Disability Plan."  Dkt. Nos. 27-2 at 34; 27-1 at 79:1-15.  In her deposition, plaintiff testified that prior to the time she received this email, she had not considered applying for short-term disability benefits because she thought her Workers' Compensation claim would be approved and she would not be eligible for short-term disability.  Dkt. No. 27-1 at 79:18-80:13.

Plaintiff's claim for short-term disability benefits was initially denied by a September 11, 2009 letter, from Holen Kowal, assistant claims examiner for the plan's administrator, Sun Life, which stated that the information in plaintiff's file did not support her contention

that she was totally disabled within the meaning of the short-term disability plan. Dkt. Nos. 27 ¶ 4; 27-12 at 1-4. The letter noted that the primary cause of the leave appeared related to conditions at work. Dkt. No. 27-12 at 3. The letter further concluded that plaintiff had not provided adequate documentation supporting a sustained severe condition that would prevent plaintiff from being able to perform the duties of her occupation in a sedentary position. *Id.*

Plaintiff appealed and on November 23, 2010, Christine Kilcoyne, a Sun Life claims analyst handling the appeal sent a letter informing plaintiff that Sun Life had conducted an additional review of the administrative record in her case. Dkt. Nos. 27-3 at 35:16-20; 27-5 at 9. According to the letter, Sun Life reversed its position and found that plaintiff was disabled. *Id.* However, the letter noted that Sun Life's records showed that plaintiff was pursuing a Workers' Compensation claim for the time period in question, and that thus she was asserting her injuries were caused by her employment. *Id.* The letter concluded plaintiff was not eligible for benefits because the short-term disability plan did not provide benefits for work-related injuries. *Id.*

**E.   The Short-Term Disability Plan**

FINRA maintains a short-term disability plan for its employees. Dkt. No. 26-3 ¶ 3. The plan is a self-funded, salary continuation program not subject to ERISA. *Id.* It is administered by Sun Life and the particulars of the plan are laid out in FINRA's "Summary Plan Description Benefit Options Guide" ("the 2006 Benefit Options Guide") which has been in effect from 2006 to the present. *Id.*; Dkt. Nos. 27-3 at 50:4-20; 27-6; 27-7. While plaintiff disputes whether the 2006 Benefit Options Guide controls as to the terms of FINRA's short-term disability plan, there appears to be no dispute as to the terms of the 2006 Benefit Options Guide itself. "After a nine-day waiting period, the Salary Continuation Plan is designed to pay [employees] either 100% or 60% of [their] weekly pay" depending on years of service. Dkt. No. 27-7 at 15. For those employees with service of "10 years or more"—plaintiff's bracket—the plan provides for 121 workdays of 100% of weekly pay. *Id.* In order to be eligible, the employee must suffer from a

Case No. 12-cv-00602 NC
ORDER RE: MOTION FOR
SUMMARY JUDGMENT
6

"disability" as that term is defined in the plan.  Under the plan, "the term 'disability' means that, due to sickness or as a direct result of an accidental injury: during the nine-day waiting period and the next six months of disability, [the employee is] unable to earn more than 80% of [their] pre-disability earnings at [their] own occupation from any employer; and [the employee is] under the regular care of a doctor, and [they] are following the requirements of [their] treatment during [their] entire period of disability." *Id.* at 16.

According to the 2006 Benefit Options Guide, the short-term disability plan contains several limitations and exclusions.  In particular, "benefits will not be paid for any disability due to," among other things, "workplace or occupational injury." *Id.* at 18.  In her deposition, plaintiff testified that no one ever made a contrary representation to her:

> Q. . . . You had an understanding that if you had a workplace or occupational injury, you could not get short-term disability, right?
>
> A. Based on the email from Judy Tam.
>
> Q. And no one ever told you otherwise, correct?
>
> A. No.

Dkt. No. 27-3 at 59:22-60:2.

On July 10, 2009, Judy Tam, FINRA's HR & Benefits coordinator sent an email to plaintiff informing her that she "cannot file for worker's compensation and short term disability at the same time." Dkt. Nos. 27-2 at 35; 27-1 at 81:19-82:6.  Plaintiff testified that she does not remember discussing this statement with anybody at FINRA or Sun Life. Dkt. No. 27-1 at 83:5-17.  The email also stated "Now that you are denied for worker's compensation, you are eligible to file for Short Term Disability." Dkt. No. 27-2 at 35.  In her deposition, plaintiff testified that FINRA made no written or oral representation suggesting that plaintiff could file for both short-term disability and Workers' Compensation benefits:

> Q. Did Judy Tam ever say anything inconsistent with the phrase, "Now that you are denied for workers' comp you are eligible for short-term disability"? Did she ever tell you anything different from that?
>
> A. I know there was some -- I don't know if it's conversation, phone conversation with Judy Tam, but from my recollection, I was told that if I filed

Case No. 12-cv-00602 NC
ORDER RE: MOTION FOR
SUMMARY JUDGMENT
7

for workers' comp I cannot claim for short-term disability.

Q. No one ever told you otherwise, correct?

A. No, no one has told me otherwise.

Q. Have you ever seen any documents or materials that would suggest that you could file for workers' comp and at the same time get short-term disability? Have you ever seen anything in writing that would suggest you could do both?

A. I haven't seen anything in writing.

Q. And no one's ever told you that at FINRA, correct?

A. Nobody.

Dkt. No. 27-1 at 84:4-22.

In her declaration submitted in opposition to the summary judgment motion, plaintiff states that she "was told by Judy Tam and Karen Dickey in Human Resources at FINRA that the short term disability plan was described in the Employee Handbook" and that she "was unaware of the 2006 NASD Benefit Options Guide as having anything to do with the short term disability benefit in 2009, and [has] no recollection of being aware of the existence of that document during [her] disability, until it was produced by the defendants in this lawsuit."  Dkt. Nos. 38 ¶ 4; 40-2, 40-3.

The employee handbook has a "Short Term Disability" section located under the more general heading "Time Off."  Dkt. No. 40-2 at 54-57.  The handbook provides that "STD benefits begin after [the employee has] been absent for nine consecutive business days (nine-day waiting period) as a result of a qualified personal illness or injury."  *Id.* at 54.  "A disability absence begins when your attending physician certifies that you are medically unable to perform any and every duty of your regular occupation. . . . When required information is received and eligibility for benefits is confirmed, STD benefits will be restored retroactive to the first day of eligibility, minus your nine day waiting period or the date that benefits ended.  Under our established guidelines, the disability carrier makes all determinations for STD benefit eligibility."  *Id.*  The "Short Term Disability" section does not state that benefits are not provided for workplace or occupational injuries.  Employees are told "If you have questions regarding this policy, contact your supervisor or

Case No. 12-cv-00602 NC
ORDER RE: MOTION FOR
SUMMARY JUDGMENT
8

HR Services Representative. For more information, go to **OASIS> Employee Resources>Benefits (Leave of Absence)**." *Id.* at 57 (emphasis in original). Plaintiff testified that she never had a discussion with anyone at FINRA about what was considered a qualified illness or injury, or what were the guidelines used to make short-term disability determinations. Dkt. No. 27-3 at 77:6-14, 79:1-14.

A separate section of the handbook is titled "Accidents and Injuries at Work." Dkt. No. 40-3 at 36. The first paragraph of that section states "The Workers' Compensation Act covers employees who sustain injuries or illness arising from the course of their employment. Workers' Compensation provides benefits including medical coverage and salary replacement resulting from a work-related injury or illness." *Id.* The handbook further states "You will be unable to use any other leave (such as sick, personal or vacation leave) while on leave for a work-related illness or injury, except when returning from leave on a reduced work schedule." *Id.* "Group benefits such as medical, dental, vision and life insurance will continue to be in effect while you are on leave of absence for a work-related injury or illness." *Id.* at 37. Plaintiff testified that she did not read the information regarding injuries and accidents until after she stopped working: "the employee handbook, when I was working there [at FINRA], I only check it if I need to, pertaining to, for instance, vacation. With regards to injuries, accidents, I did not read it while I was there." Dkt. No. 27-3 at 84:19-24.

The handbook's introductory section states that the handbook was prepared "to provide [employees] with guidance on [the] organization's policies and procedures." Dkt. No. 40-2 at 9. It further states that "[t]his Handbook is not a contract, express or implied, guaranteeing employment for any specific duration." *Id.* Additionally, "[t]he policies in this Handbook are summaries only and are subject to change at the sole discretion of FINRA, as are all other policies, procedures, benefits and other programs. . . . In cases of a conflict between a contract entered into by FINRA and a statement in the Handbook, the contractual provision will control." *Id.* For more information, the handbook directs employees to the department referenced in the section, their supervisor or HR Services

Case No. 12-cv-00602 NC
ORDER RE: MOTION FOR
SUMMARY JUDGMENT
9

Representative, or the Associate General Counsel for Employment and Labor in the Office of General Counsel. *Id.*

## II. STANDARD OF REVIEW

Summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Bald assertions that genuine issues of material fact exist are insufficient. *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007).

The moving party bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that a genuine issue of fact exists for trial. *Ruffin v. Cnty. of Los Angeles*, 607 F.2d 1276, 1280 (9th Cir. 1979). All reasonable inferences, however, must be drawn in the light most favorable to the nonmoving party. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).

## III. DISCUSSION

**A.  Plaintiff Raises No Triable Dispute of Material Fact as to Her Breach of Contract Claim.**

The issue of whether there is a contract between the parties obligating FINRA to provide short-term disability benefits for work-related injuries covered by Worker's Compensation is based on facts that are undisputed, and thus can be decided by the Court. "Contract formation requires mutual consent, which cannot exist unless the parties 'agree upon the same thing in the same sense.'" *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199,

208 (2006) (citations omitted). "If there is no evidence establishing a manifestation of assent to the 'same thing' by both parties, then there is no mutual consent to contract and no contract formation. . . . Mutual consent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." *Id.* (internal quotation marks and citations omitted). "Where the existence of a contract is at issue and the evidence is conflicting or admits of more than one inference, it is for the trier of fact to determine whether the contract actually existed. But if the material facts are certain or undisputed, the existence of a contract is a question for the court to decide." *Id.* (citation omitted). A contractual understanding need not be express, but may be implied in fact, arising from the parties' conduct evidencing their *actual* mutual intent. *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 336 (2000) (citation omitted). An employer's written personnel policies may be an important source of implied-contract evidence. *Id.* at 344. "The issue is whether the employer's words or conduct, on which an employee reasonably relied, gave rise to that *specific* understanding." *Id.* at 342 (emphasis in original).

Here, plaintiff's complaint alleges that "[i]n return for Ms. Virtusio's services while she was defendant's employee, defendant promised to continue to pay 100% of her salary for up to 121 days in the event she became disabled and unable to work," and that "Ms. Virtusio performed all of her obligations under the STD salary continuation program, but defendant did not perform its obligation to pay her as promised." Dkt. No. 1 at 10. FINRA asserts that plaintiff's breach of contract (as well as her other clams) fail as a matter of law because it is undisputed that plaintiff's injury occurred at work and as such, it is not covered by the short-term disability plan. Dkt. No. 26-1. The Court agrees with FINRA that there are no disputed factual issues on the contract claim.

**1.  There Is No Genuine Dispute as to Whether Plaintiff's Disability Was Caused by Workplace Conditions.**

As a threshold matter, the Court finds that there is no genuine issue of fact as to the cause of plaintiff's disability. Plaintiff testified under oath that the shoulder condition upon

which she bases her short-term disability claim and her Workers' Compensation benefits claim is the same, that it occurred at work, and was caused by the poor ergonomics of her workstation. Dkt. Nos. 27-1 at 74:2-76:12; 27-2 at 33; 26-2 at 38:15-17, 46:8-13; *see also* Dkt. Nos. 27 ¶ 5; 27-12 at 7. It is also undisputed that plaintiff is receiving Workers' Compensation payments for the injury she claims entitle her to short-term disability benefits. Dkt. Nos. 27-3 at 40:10-24, 42:14-21; 27-5 at 10; 27-2 at 34.

Plaintiff has not presented any facts to dispute the evidence that her disability was caused by her workplace conditions. In her declaration submitted in opposition to the summary judgment motion, plaintiff states that she "became disabled because of a gradual deterioration of [her] shoulders and neck, which seems to have been associated with working at a computer day after day." Dkt. No. 38 ¶ 2. This statement does not appear inconsistent with plaintiff's testimony that her disability was work-related. To the extent that it attempts to create a genuine issue of material fact by contradicting plaintiff's own testimony, it must be disregarded. *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266-67 (9th Cir. 1991) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.").

**2.    There Is No Genuine Dispute as to Whether FINRA Is Obligated to Provide Short-Term Disability Benefits for a Work-Related Disability.**

FINRA asserts that summary judgment is proper because its short-term disability plan contains a specific exclusion for workplace injuries. In support for this assertion, FINRA relies on the 2006 Benefit Options Guide which provides that benefits under the short-term disability plan "will not be paid for any disability due to," among other things, "workplace or occupational injury." Dkt. Nos. 26-3 ¶ 3; 27-7 at 18. Moreover, plaintiff admitted under oath that she understood she cannot pursue short-term disability benefits for a workplace or occupational injury, or a claim covered by Workers' Compensation. Dkt. Nos. 27-1 at 84:4-22; 27-3 at 59:22-60:2.

In her opposition to the summary judgment, plaintiff argues that the workplace injury exclusion does not apply because plaintiff's disability was due to sickness not injury. Dkt.

No. 37 at 4-6. To be eligible under the short-term disability plan, plaintiff must show a disability "due to sickness or as a direct result of an accidental injury"; however, the disability would not be covered if it is due to "workplace or occupational injury." Dkt. No. 27-7 at 16, 18. Plaintiff argues that disability law treats cumulative trauma, which she claims is the cause of plaintiff's disability, as a "sickness" and not as an "accidental injury." Dkt. No. 37 at 5. Plaintiff then makes a logical leap in concluding that her disability does not fall within the exclusion for a workplace "injury." *Id.* This argument is not persuasive. First, accepting for purposes of the argument plaintiff's characterization of her injury as a "cumulative trauma," there is nothing in the plain language of the 2006 Benefit Options Plan that supports the argument that such a trauma would fall outside the scope of disability due to "workplace or occupational injury." Second, plaintiff has presented no evidence that either party intended for the short-term disability plan to provide benefits for injuries due to cumulative trauma in the workplace in addition to Workers' Compensation benefits, but not for accidental work-related injuries. Third, the cases cited by plaintiff merely show that repetitive stress injuries and injuries resulting from an existing degenerative disease have been found to fall outside insurance policies that provided coverage for accidental injuries. *See id.* Those cases do not construe the terms workplace or occupational injury, and do not stand for the proposition that a cumulative trauma never qualifies as "injury." Plaintiff's legal argument that her condition is not an "injury" thus has no merit, and does not create a triable issue of fact.

Additionally, plaintiff opposes summary judgment on the ground that the terms of the short-term disability plan were "controlled" by the employee handbook which mentions no workplace injury exclusion in its section on short-term disability benefits. *Id.* at 6-8. In her declaration submitted in opposition to the summary judgment motion, plaintiff states that she "was told by Judy Tam and Karen Dickey in Human Resources at FINRA that the short term disability plan was described in the Employee Handbook" and that she "was unaware of the 2006 NASD Benefit Options Guide as having anything to do with the short term disability benefit in 2009, and [has] no recollection of being aware of the existence of that

Case No. 12-cv-00602 NC
ORDER RE: MOTION FOR
SUMMARY JUDGMENT
13

document during [her] disability, until it was produced by the defendants in this lawsuit." Dkt. Nos. 38 ¶ 4. In addition, plaintiff points that her counsel "repeatedly requested the plan document(s) for the short term disability plan, and instead of providing the 2006 NASD Benefit Options Guide, FINRA and Sun Life both either ignored the requests or provided the FINRA Employee Handbook." Dkt. No. 37 at 6. These arguments do not raise a genuine issue of material fact as to plaintiff's breach of contract claim. Plaintiff has presented no evidence of a representation or any other conduct by FINRA that objectively manifests an agreement to provide short-term disability benefits for workplace injuries that are also covered by Workers' Compensation. To the contrary, plaintiff testified that she was never told, and has never seen a document suggesting, that she can file a claim for Workers' Compensation and at the same time receive short-term disability benefits. Dkt. No. 27-1 at 84:4-22. Because the undisputed facts show that neither party to the alleged contract had any expectation that plaintiff would be paid short-term disability benefits for workplace injuries, plaintiff cannot show that there is mutual consent supporting her contract claim.

Moreover, the absence of an explicit workplace exclusion in the employee handbook does not create a triable issue of fact given that the handbook does not purport to be an exclusive or controlling source of FINRA's short-term disability benefit policies. The handbook explicitly states that (1) the handbook is not a contract, (2) the policies in the handbook are summaries only subject to change at the sole discretion of FINRA, (3) in cases of a conflict between a contract entered into by FINRA and a statement in the handbook, the contractual provision will control, and (4) directs the employees to additional sources of information. Dkt. No. 40-2 at 9. Additionally, the short-term disability benefits section refers to "qualified personal illness or injury" and "determinations for STD benefit eligibility" without defining how those eligibility qualifications are determined. *Id.* at 54. The handbook also has a separate section dealing with "Accidents and Injuries at Work." Dkt. No. 40-3 at 36. In light of this evidence, plaintiff cannot show that she reasonably relied on the handbook as establishing a specific understanding that FINRA will provide

short-term disability benefits for work-related injuries covered by Workers' Compensation. In fact, plaintiff here specifically disclaimed such reliance. *See* Dkt. Nos. 27-1 at 84:4-22; 27-3 at 59:22-60:2.

In her opposition, plaintiff makes much of the allegedly contradictory evidence concerning the relationship between FINRA and Sun Life, and their respective roles in making decisions regarding eligibility for short-term disability benefits. Dkt. No. 37 at 8-9. Plaintiff also asserts that FINRA interprets its short-term disability benefits plan in an arbitrary fashion in various hypothetical scenarios where the cause of the disability is not clear, and there is a dispute as to whether it can be considered as work-related. *Id.* at 9-10. However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. In this case, there is no factual dispute that plaintiff's disability is work-related. Any dispute about the interplay between FINRA and Sun Life, or the abstract application of the short-term disability plan in hypothetical situations does not raise a triable issue of material fact as to plaintiff's breach of contract claim.

In sum, the evidence supports FINRA's contention that plaintiff has presented no genuine issue of material fact as to her claim that FINRA entered into a contract under which it was required to provide plaintiff with short-term disability benefits for her workplace injury. Because plaintiff cannot establish all elements necessary to support her breach of contract claim, summary judgment as to that claim is appropriate.

**B.     Summary Judgment Is Appropriate as to All of Plaintiff's Claims.**

Plaintiff's remaining claims for bad faith, intentional infliction of emotional distress, and failure to pay wages due are also premised on the allegation that FINRA was required to pay short-term disability benefits for plaintiff's injury. Because the Court has concluded that summary judgment as to that claim should be granted, it grants summary judgment as to all of the other claims. *See* Dkt. 37 at 13 (conceding that if there is no contract that was breached, the bad faith and intentional infliction of emotional distress claim will also fail).

Case No. 12-cv-00602 NC
ORDER RE: MOTION FOR
SUMMARY JUDGMENT
15

## IV. CONCLUSION

Because no genuine issue of material fact exists to support plaintiff's allegations that FINRA has a contractual obligation to provide short-term disability benefits for plaintiff's work-related disability which is also covered by Workers' Compensation, FINRA's motion for summary judgment is GRANTED. The pretrial conference scheduled for May 8, 2013 is vacated.

IT IS SO ORDERED.

Date: May 7, 2013

_____

Nathanael M. Cousins
United States Magistrate Judge