UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NELIA VIRTUSIO,<br><br>        Plaintiff,<br><br>    v.<br><br>FINANCIAL INDUSTRY<br>REGULATORY AUTHORITY, INC.,<br><br>        Defendant. | Case No. 12-cv-00602 NC<br><br>**ORDER ON DEFENDANT'S MOTION FOR ATTORNEY'S FEES**<br><br>Re: Dkt. No. 52 |

    This action was brought by plaintiff Nelia Virtusio against her former employer, defendant Financial Industry Regulatory Authority, Inc. ("FINRA"). Virtusio brought claims for breach of contract, bad faith, intentional infliction of emotional distress, and failure to pay wages arising out of FINRA's failure to pay short-term disability ("STD") benefits. The Court granted FINRA's motion for summary judgment because Virtusio failed to establish that FINRA was contractually obligated to provide STD benefits. Dkt. No. 49 at 1:22-25. Pending before the Court is FINRA's motion for attorney's fees. Dkt. No. 52. For the reasons set forth below, the Court GRANTS FINRA reasonable attorney's fees as required by California Labor Code § 218.5 and DENIES FINRA's request for sanctions against plaintiff's counsel under 28 U.S.C. § 1927 or the Court's inherent authority.

# I. DISCUSSION

FINRA has filed a motion for attorney's fees incurred in defense of Virtusio's claims. Dkt. No. 52. FINRA argues that awarding attorney's fees is mandatory under California Labor Code § 218.5 and also appropriate as a sanction under 28 U.S.C. § 1927. Dkt. No. 52 at 10:1-2, 11:20-22. Thus, the Court examines whether California Labor Code § 218.5 applies and whether sanctions against plaintiff's counsel under 28 U.S.C. § 1927 or the Court's inherent authority are proper.

**A.  California Labor Code § 218.5 is Applicable.**

California Labor Code § 218.5 provides in relevant part:

> In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action.

Cal. Labor Code § 218.5 (1986).[1]

FINRA claims that Virtusio's action was brought for the nonpayment of wages, that FINRA requested attorney's fees in answer to Virtusio's complaint, and that FINRA is therefore entitled to a mandatory award of attorney's fees under California Labor Code § 218.5 as a prevailing party. Dkt. Nos. 1 at 20:10; 52 at 10:1-2. In opposition, Virtusio argues that she did not request attorney's fees in connection with her labor code claim as required by § 218.5. Dkt. No. 55 at 6:24-7:1-6. Virtusio also argues that § 218.5 only applies to attorney's fees accrued specifically in defense of her fourth cause of action, violation of California Labor Code § 203. *Id.* at 7:23-26. For the reasons discussed below, the Court is not convinced by these arguments.

//

---

[1] As of January 1, 2014, an amended Section 218.5 added that "if the prevailing party in the court action is not an employee, attorney[s'] fees and costs shall be awarded pursuant to this section *only if* the court finds that the employee brought the court action in bad faith." Cal. Labor Code § 218.5 (2014) (emphasis added). *See Johnson v. Hewlett-Packard Co.*, No. 09-cv-03596 CRB, 2014 WL 988824, at *2-7 (N.D. Cal. Mar. 10, 2014) (holding that the amended statute changed the law and did not apply retroactively).

### 1. FINRA Requested Attorney's Fees Upon Initiation of the Action.

California Labor Code § 218.5 provides for an award of attorney's fees if "any party to the action [request] attorney's fees and costs upon the initiation of the action." Virtusio argues that, although she did request fees, her complaint did not request attorney's fees for her Labor Code claim. Dkt. Nos. 1 at 10-14; 55 at 6:19-28, 7:1-21. While the Court is not convinced that Virtusio's characterization of her request for attorney's fees is accurate, the plain language of the statute requires an award of fees if "*any* party to the action" request attorney's fees. Cal. Labor Code § 218.5 (emphasis added); *McAlpine v. Superior Court*, 209 Cal. App. 3d 1, 6 (1989) (holding that, unless doing so would produce "absurd results," courts should interpret statutory language in accordance with its ordinary meaning). Because California Labor Code § 218.5 is a "two-way fee-shifting statute," and as FINRA is a party to the action who requested attorney's fees, the Court finds that fees were requested upon initiation of the present action as required for § 218.5 to apply. Dkt. No. 1 at 20:10; *see Aleman v. AirTouch Cellular*, 209 Cal. App. 4th 556, 583 (2012).

### 2. The STD Benefits Are Wages Under California Labor Code § 218.5.

Virtusio's complaint primarily involved the alleged nonpayment of STD benefits. Dkt. No. 1 at 10-12. Because California Labor Code § 218.5 applies to causes of action brought for the nonpayment of wages, a threshold issues is whether the STD benefits in question constitute wages under the statute. Virtusio has never disputed that the STD benefits are wages. Dkt. No. 1 at 12:7-18. FINRA now claims that the STD benefits are wages, however FINRA previously argued in its motion for summary judgment that they were not. Dkt. Nos. 26-1 at 19:15-24; 52 at 10:18-23.

California Labor Code § 200 defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." The Supreme Court of California noted that § 218.5 "would require courts to award attorney fees to a prevailing party in any action involving employment benefits (salary, pension fund, health benefits, etc.) . . . ." *Kirby v. Immoos Fire Protection, Inc.*, 53 Cal. 4th 1244, 1258 (2012) (citing

Cal. S. Rules Comm., Rep. on Bill No. 2570, as amended May 14, 1986, p. 1) (internal quotation marks omitted) (discussing the legislative history of § 218.5). Similarly, Virtusio previously argued that "health and fringe benefits are included within Labor Code 200 under the cases." Dkt. No. 37 at 15:17-20 (citing *People v. Alves*, 155 Cal. App. 2d Supp. 870 (1957); *Road Sprinkler Fitters Union No. 669 v. G & G Fire Sprinklers, Inc.*, 102 Cal. App. 4th 765 (2002)).

Here, plaintiff's complaint alleges that "[i]n return for Ms. Virtusio's services while she was defendant's employee, defendant promised to continue to pay 100% of her salary for up to 121 days in the event she became disabled and unable to work[,]" and that "Ms. Virtusio performed all of her obligations under the STD salary continuation program, but defendant did not perform its obligation to pay her as promised." Dkt. No. 1 at 10. Because the STD benefits were paid in exchange for labor performed, as supported by available case law, the Court finds that the STD benefits constitute wages for the purpose of § 218.5.

**3. California Labor Code § 218.5 Applies to the First and Fourth Causes of Action but not Causes of Action Two and Three.**

In interpreting California Labor Code § 218.5, California courts have held that the language "any action brought for the nonpayment of wages" means any individual *cause* of action. *Aleman*, 209 Cal. App. 4th at 579, 583-84. In *Kirby*, the California Supreme Court provided courts with guidance for evaluating the applicability of § 218.5, stating that "[t]he words 'nonpayment of wages' in section 218.5 refer to an alleged legal violation, not a desired remedy." 53 Cal. 4th at 1256. Here, Virtusio brought suit against FINRA alleging: (1) breach of contract, (2) bad faith, (3) intentional infliction of emotional distress, and (4) failure to pay wages due. Dkt. No. 1 at 10-12. While the fourth cause of action is the only claim that is explicitly statutory in nature, the legal violation in the first cause of action, breach of contract, is the failure to pay wages due. Dkt. No. 1 at 10:8-9.

The legal violation in the second and third claims, however, is not the nonpayment of wages. The alleged violation in the second cause of action for bad faith is that FINRA

Case No. 12-cv-00602 NC
ORDER ON MOTION FOR
ATTORNEY'S FEES
4

attempted unreasonably and in bad faith to add a non-existent exclusion to its contract with Virtusio. Dkt. No. 1 at 10:18-21. The third cause of action claims that FINRA intentionally inflicted emotional distress on Virtusio. *Id.* at 11:23-25. As the legal violation for causes of action two and three is not the failure to pay wages due, attorney's fees should not be awarded based on FINRA's defense of these claims. *See Aleman*, 209 Cal. App. 4th at 583-84.

**B.     FINRA's Proposed Attorney's Fees for Causes of Action One and Four are Reasonable.**

In awarding attorney's fees, the Court must first "calculate a lodestar by multiplying the number of hours it finds the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th. Cir. 1995) (internal quotation marks omitted) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). In determining a reasonable amount of hours, the Court must review time records to decide whether the hours claimed by the applicant are adequately documented and whether any of the hours were unnecessary, duplicative, or excessive. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987). To determine reasonable hourly rates, the Court must look to the prevailing rate in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979-80 (9th Cir. 2008) ("[A]ffidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate.") (internal quotation marks and citation omitted). Generally, the relevant community is the forum in which the district court sits, or a community shown to be comparable to that forum. *Id.* at 979.

The Court has discretion to reduce the proposed hours if there is inadequate documentation or if the proposed time is not reasonable. *Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001). The Court must "provide a concise but clear explanation," for any adjustments ultimately made to the attorney's fee awarded. *McGrath*, 67 F.3d at 253

(internal quotation marks and citation omitted). *See also Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (holding that a "district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion . . . without a more specific explanation.").

### 1. The Number of Hours Reasonably Expended

FINRA filed records of its invoices submitted for the defense of this action upon request by the Court. Dkt. Nos. 77 at 3:17-19; 79-4 at 25-84. FINRA claims that it "expended a total of more than 329 hours since 2011 defending against Plaintiff's meritless claims." Dkt. No. 52 at 16:3-4.

The gravamen of Virtusio's complaint was the first cause of action for breach of contract and the majority of FINRA's time was understandably spent defending against it. Dkt. Nos. 49 at 2:9-1179-4 at 5:24-26; 79-5 at 5:20-24. FINRA, however, has referred to this action as a "run-of-the-mill breach of contract claim." Dkt. Nos. 52 at 13:17-18; 70 at 3:21-23. Additionally, though FINRA has spent 329 hours in defense of this action, it has only billed .40 hours of paralegal time. Dkt. Nos. 50-3 at 43; 79-4 at 25-84. FINRA's attorneys expended 13.3 hours on initial disclosures, 16.4 hours on an initial status report, 22.7 hours on a mediation brief, 36 hours on FINRA's motion for summary judgment, and 16.7 hours on the response in support of the motion for summary judgment. Dkt. No. 79-4 at 25-84.

The Court finds that, due to the "run-of-the-mill" nature of the action, FINRA's paralegal billing of approximately 0.12% of the total hours requested, and the Court's inability to readily discern from FINRA's invoices which hours were unnecessarily duplicative or inefficient, a ten percent reduction in FINRA's total hours requested is reasonable. Accordingly, the Court finds that FINRA reasonably expended a total of 296.1 hours in defense of this action.

### 2. The Reasonable Hourly Rate

Four attorneys and one paralegal from FINRA worked on this action. Dkt. Nos. 52-3 at 43; 79-4 at 25-80. Attorneys Barker and Geannacopulos accrued approximately 97% of

Case No. 12-cv-00602 NC
ORDER ON MOTION FOR
ATTORNEY'S FEES                6

FINRA's total requested hours and both billed their client $305 per hour. *Id.* Barker graduated magna cum laude from the University of California, Hastings College of the Law in 2010, clerked at the Vermont Supreme Court from August 2010 through August 2011, and has been an associate at Seyfarth Shaw since August, 2011. Dkt. No. 79-5 ¶ 3. Barker claims that she typically charges $325 per hour. Dkt. Nos. 52-1 at 4:25-28; 79-5 ¶ 5. Geannacopulos graduated from the University of California, Berkeley Boalt Hall School of Law in 1984, became a partner at Seyfarth in 1992, and became managing partner of Seyfarth's San Francisco Office in 2005. Dkt. No. 79-4 ¶ 3. Geannacopulos asserts that his standard rate is $705 per hour and that is discounted rate is $580. *Id.* ¶ 4.

In addition, attorney de Koning billed 8.5 hours and attorney Peterson billed .7 hours. Paralegal Dowd billed .4 hours. Peterson, de Koning, and Dowd all charged the same $305 per hour rate. Attorney de Koning is an associate at Seyfarth Shaw and Peterson is a partner. Dkt. No. 51-1 ¶ 12. Attorney de Koning graduated from Santa Clara University School of Law in 2007. Dkt. No. 79-6 ¶ 3. She claims she typically charges $410 per hour. *Id.* at ¶ 4.

The Court finds that the flat rate of $305 per hour charged by all attorneys in this matter is below the prevailing market rate for an associate of Barker's level of experience, an associate of de Koning's experience, and a partner of Geannacopulos' experience. In support of this hourly rate, FINRA cites to several cases awarding higher market rates in employment cases in the Bay Area. Dkt. No. 79-4 at ¶ 6.[2] FINRA also cites to an industry publication establishing an average billing rate for an associate in San Francisco to be $482 per hour and that of a partner to be $675 per hour. *Id.* at ¶ 5. The Court finds this support sufficient to award FINRA fees at the rate of $305 per hour for all attorneys.[3] *See*

---

[2] FINRA's request for judicial notice filed in support of its motion for attorneys' fees, Dkt. No. 79, is granted. A court may "take judicial notice of undisputed matters of public record, including documents on file in federal or state courts." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citation omitted).

[3] Although they did not provide the year that Peterson graduated from law school, because she is a partner, the Court can presume that she has greater years of experience than de Koning or Barker, and the same reasonable rate analysis applies.

*Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1099-1100 (N.D. Cal. 2010) (finding reasonable market rates from $380 to $775 per hour for experienced employment and civil rights attorneys in the Northern District); *see also Lafever v. Acosta, Inc.*, No. 10-cv-1782 BZ, 2011 WL 5416650, at *2 (N.D. Cal. Nov. 8, 2011) (collecting cases).

### 3.  Apportionment

Here, as discussed above, the Court must apportion FINRA's fee request, awarding only those fees accrued in defense of the causes of action one and four for the nonpayment of wages. *Aleman*, 209 Cal. App. 4th at 583-84. FINRA's attorneys "did not keep records of the work [they] did allocated by claim . . . ." Dkt. Nos. 79-4 at 5:21-23; 79-5 at 5:18-21. The Court is required, however, to "make *some* attempt to adjust the fee award in an effort to reflect an apportionment." *The Traditional Cat Ass'n, Inc. v. Gilbreath*, 340 F.3d 829, 834 (9th Cir. 2003) (internal quotation marks and citation omitted). FINRA has provided the Court with copies of their invoices but they are not in sufficient detail to allow the Court to apportion fees between the four causes of action. Dkt. No. 79-4 at 25-84. FINRA's attorney Nick Geannacopulos estimates that he spent approximately fifteen percent of his time, combined, working on causes of action two and three. Dkt. No. 79-4 at 6:1-2. FINRA's attorney Emily Barker estimates that she spent approximately twenty percent of her time, combined, working on causes of action two and three. Dkt. No. 79-5 at 5:26-28.

Virtusio brought four causes of action but the gravamen of her complaint was for the nonpayment of wages relating to causes of action one and four. Dkt. No. 49 at 2:9-11. This Court's Order granting FINRA's motion for summary judgment held that Virtusio's claims for bad faith, intentional infliction of emotional distress, and failure to pay wages due were "premised on the allegation that FINRA was required to pay [STD] benefits . . . ." *Id.* at 15:23-25. Therefore, the Court finds that FINRA's estimation of time spent on causes of action two and three appears reasonable. Geannacopulos worked a total of approximately 91.2 hours, after applying a ten percent reduction, and Barker worked approximately 196.4 hours, on this action. Dkt. No. 79-4 at 25-84. The Court finds that, based on the amount of

time this Court spent considering Virtusio's claims of bad faith and intentional infliction of emotional distress, and based on FINRA's own estimates, that Geannacopulos worked a total of 77.5 hours, and Barker worked 157.1 hours, in defense of causes of action one and four for the nonpayment of wages.  FINRA's total hours reasonably expended in defense of this action, after applying a deduction to the hours requested and apportionment, are 243.2.

|  | Hours Request | 10% Reduction | Applicable Apportionment |
|---|---|---|---|
| **Geannacopulos** (attorney) | 101.3 | 91.17 | 77.4945 (15%) |
| **Barker** (attorney) | 218.2 | 196.38 | 157.104 (20%) |
| **De Koning** (attorney) | 8.5 | 7.65 | 7.65 |
| **Peterson** (attorney) | .7 | .63 | .63 |
| **Dowd** (paralegal) | .4 | .36 | .36 |
| **Total Hours** | **329.1** | **296.19** | **243.2385** |
| **Fee ($305/hr)** | **$100,375.50** | **$90,337.95** | **$74,187.74** |

### C. Sanctions Against Plaintiff's Counsel Are Not Appropriate.

Finally, FINRA argues that this Court has inherent power and power granted by statute to impose sanctions against plaintiff's counsel "for pursuing multiple claims with no basis in the law."  Dkt. No. 52 at 7:10-11.  Title 28 U.S.C. § 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred . . . ."  As FINRA notes, sanctions under § 1927 "are warranted by a finding of reckless or subjective bad faith."  Dkt. No. 52 at 11:25-28 (citing *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002)).  FINRA goes on to state that "[i]n the Ninth Circuit bad faith is present when an attorney knowingly or recklessly raises a *frivolous* argument, or argues a meritorious claim for the purpose of harassing an opponent."  Dkt. No. 52 at 12:2-4 (citing *B.K.B.*, 276 F.3d at 1107) (internal quotation

marks omitted). Additionally, FINRA asserts that this Court has inherent power to impose sanctions deriving from its need "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." Dkt. No. 52 at 12:10-13 (citing *Chambers v. Nasca, Inc.*, 501 U.S. 32, 43 (1991) (internal quotation marks omitted).

Because the Court is not persuaded by FINRA argument that plaintiff's counsel acted "in an unreasonable and vexatious manner" in pursuing plaintiff's claims, FINRA's request for attorney's fees on this ground is denied.

## IV. CONCLUSION

The Court GRANTS FINRA's motion for attorney's fees under California Labor Code § 218.5 in the amount of $74,187.74.

FINRA's request for attorney's fees against plaintiff's counsel under 28 U.S.C. § 1927 or the Court's inherent authority is DENIED.

IT IS SO ORDERED.

Date: March 31, 2014

_____
Nathanael M. Cousins
United States Magistrate Judge